# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY T. MOORE, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17−cv−1143−SMY |
| | ) |
| DEBRA J. PHILLIPS, | ) |
| BRENDAN F. KELLY, | ) |
| TYSON MELVIN, | ) |
| DAVID LANDMANN, | ) |
| JUDY DAHLIN, | ) |
| DENNIS PLEW, | ) |
| CAKOHIA POLICE DEPARTMENT, | ) |
| UNKNOWN PARTIES #1-12, | ) |
| COUNTY OF ST. CLAIR, ILLINOIS | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Anthony T. Moore, Jr., an inmate at St. Clair County Jail, brings this action for various deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 and violations of Illinois state law. Plaintiff requests injunctive relief and damages.

Plaintiff originally filed this action on October 23, 2017. (Doc. 1). On November 27, 2017, Plaintiff filed an Amended Complaint (Doc. 8), which is his right under Fed. R. Civ. P. 15(a). The Amended Complaint supersedes and replaces the original Complaint, *Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 640 (7th Cir. 2004).

This case is now before the Court for a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Amended Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

### The Amended Complaint

Plaintiff makes the following allegations in his Amended Complaint. On July 24, 2013, a jury found Plaintiff guilty of 2 Counts of aggravated battery with a firearm and 1 Count of attempted first degree murder in the December 20, 2012 shooting of 15-year-old "J.B.", in case no. 12-cf-0182604 of St. Clair County, Illinois. (Doc. 8, p. 6). Plaintiff was sentenced to 34

years' imprisonment. *Id*. At trial, J.B. testified that Plaintiff threw her in a ditch and fired 3 shots at her, 2 of which struck her back and the base of her skull. *Id.* J.B. testified that Plaintiff shot her because he believed she was "snitching" about a UPS truck robbery. *Id*.

Plaintiff was also indicted in 2013 in this District Court on 1 Count of a Hobbs Act Robbery, based on the robbery of a UPS truck. *Id*. *United States v. Moore*, 13-cr-30212-DRH (S.D. Ill. 2013). A jury found him guilty in 2014. *Id.* During the federal trial, J.B. testified that she believed Plaintiff robbed the UPS truck, and that he subsequently shot her and left her for dead. (Case 13-30212, Doc. 84, p. 84). Plaintiff's attempt to eliminate a witness adverse to him was taken into account in determining the length of his sentence and the decision to run it consecutively to his state law sentence; the Seventh Circuit later upheld the sentence and its enhancement on those grounds. *U.S. v. Moore*, 784 F.3d 398, 405-06 (7th Cir. 2015).

Defendant Landmann testified at the state trial that he interviewed J.B. several hours after the incident. (Doc. 8, p. 7). Defendant Plew also testified regarding subsequent interviews he conducted with J.B. *Id.*

Plaintiff appealed his state conviction, and the Illinois Appellate Court reversed the judgment on July 26, 2016 and remanded the case for a new trial on the basis of an improper jury instruction. *Id*. *People v. Moore*, No. 5-13-0466, 2016 WL 4041841 (Ill. App. 5th Dis. July 26, 2016). It appears that Plaintiff's state court proceedings are currently set for re-trial in 2018.

Plaintiff claims that he did not shoot J.B. and that he was at a girlfriend's house from 9:00 pm on December 19, 2012 until 9:00 am December 20, 2012. (Doc. 8, p. 7). He was then arrested at his Aunt Vicky's house at 10:00 am on December 20, 2012. *Id*. Twelve officers converged on the scene, and shot Plaintiff with a Taser. *Id.* The officers then proceeded to

stomp on Plaintiff and call him names. *Id*. The officers had neither an arrest warrant, nor probable cause to arrest him. (Doc. 8, p. 10).

Plaintiff was taken to the Cahokia police department where he was interviewed by Defendant Melvin. (Doc. 8, p. 7). Melvin later testified in front of a grand jury, along with Judy Dahlin, that police had a lead on the gun that could connect Plaintiff with the shooting. (Doc. 8, p. 8). Melvin also testified that he had observed blood spatter on Plaintiff's shirt when he interviewed him, and represented to a grand jury that the blood stains were in the process of being tested. *Id*. Plaintiff alleges that no gun was ever recovered, and that the stains on his shirt were not tested. *Id.*

Plaintiff also alleges that J.B. told police that he was the shooter because she was obsessed with him and was jealous of his relationship with Victoria Walker. *Id*. Plaintiff refused to become sexually involved with J.B. because she was a minor at the time of the shooting. *Id*.

When Defendant Landmann interviewed J.B., she identified Plaintiff because she was enraged that Plaintiff had rejected her, despite the fact that she knew beyond a shadow of a doubt that Plaintiff was not the shooter. *Id*. J.B. later regretted her statement and tried to tell Landmann that she lied, but Landmann told her that "we've been waiting to lock up that motherfucker for a long time . . . we're going with Anthony as the shooter . . . so make sure you state that." *Id*. J.B. kept asserting that Plaintiff was not the shooter, but Landmann did not listen to her. *Id*. Plaintiff heard this information through a confidential informant. *Id*.

Defendants Plew and Melvin came to the hospital to interview J.B.. *Id*. They brought a video camera and a photo lineup. *Id*. Before filming, Plew told J.B. to identify Plaintiff. *Id*. J.B. allegedly told them that Plaintiff was not the shooter and that another unknown individual shot her. (Doc. 8, p. 9). Plew and Melvin said that they didn't care and if J.B. did not implicate

4

Plaintiff, they would charge her with perjury and prosecute her lover on child molestation charges. *Id*. J.B. felt threatened and coerced and identified Plaintiff as the shooter. *Id*.

Plaintiff's unnamed girlfriend called the St. Clair County State's Attorney's office a week or so after his arrest to offer Plaintiff's alibi. *Id*. She refused to come in to discuss the matter because she did not trust law enforcement. *Id*. Instead, she mailed an affidavit attesting to the fact that Plaintiff was with her at the time of the shooting along with a letter stating that Plaintiff was innocent. *Id*. After sending this correspondence, the unnamed girlfriend had no further contact with the State's Attorney's office. *Id*.

Defendants Kelly, Dahlin, and Phillips all failed to inform Plaintiff's attorneys or the court that they had received letters and affidavits from a witness. (Doc. 8, pp. 9-10). Melvin and Dahlin both failed to make this potentially exculpatory information available to the grand jury. (Doc. 8, p. 10). Melvin and Dahlin also continued to tell the grand jury that J.B. had identified Plaintiff as the shooter, despite knowing that information was false. *Id*.

Plaintiff alleges that J.B. was coerced into testifying before the grand jury and at trial in much the same manner that she was coerced to pick Plaintiff out of a lineup. (Doc. 8, pp. 10-11).

## Discussion

Based on the allegations of the Amended Complaint, the Court finds it convenient to divide the pro se action into 10 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court:

> **Count 1 –** Defendants Plew, Melvin, Landmann, Dahlin, Phillips, and Kelly violated Plaintiff's Due Process rights under the Fourteenth Amendment when they manufactured false evidence against Plaintiff in order to obtain a conviction against him;
>
> **Count 2 –** Defendants Dahlin, Phillips, and Kelly violated Plaintiff's Due Process rights under the Fourteenth Amendment when they failed to turn over the exculpatory evidence provided by Plaintiff's unnamed girlfriend;

5

**Count 3** – Defendants Dahlin, Kelly, Phillips, Landmann, Plew, and Melvin conspired to violate Plaintiff's Due Process rights under the Fourteenth Amendment when they agreed to fabricate evidence against him;

**Count 4** – Defendants Landmann, Plew, Melvin, Kelly, Dahlin, and Phillips maliciously prosecuted Plaintiff without probable cause;

**Count 5** – Defendants Melvin, Landmann, Plew, Unknown Parties #1-12, Kelly, Dahlin, and Phillips violated Plaintiff's right to be free from unreasonable searches and seizures under of the Fourth Amendment where they arrested Plaintiff on December 20, 2012 without probable cause or a warrant, and where they knew that the eventual warrant was based on false information;

**Count 6** – Defendants Plew, Landmann, Melvin, and Unknown Parties #1-12 used excessive force against Plaintiff during his arrest in violation of the Fourteenth Amendment when they tased and stomped on him on December 20, 2012;

**Count 7** – Defendants Landmann, Plew, Melvin, and Unknown Parties #1-12 were deliberately indifferent in violation of the Fourteenth Amendment when they refused to secure Plaintiff medical care after the arrest;

**Count 8** – Defendants City of Cahokia, Illinois and St. Clair County had unconstitutional policies of allowing officers to use excessive force when conducting arrests and searches without warrants in violation of the Fourteenth Amendment;

**Count 9** – Defendants Landmann, Plew, Melvin, and Unknown Parties #1-12 committed the tort of assault and battery upon Plaintiff whey they arrested him on December 20, 2012;

**Count 10** – Defendants Plew, Landmann, Melvin, Dahlin, Kelly, Phillips, and Unknown Parties #1-12 intentionally inflicted emotional distress upon Plaintiff when they arrested and prosecuted him.

Plaintiff's claims generally fall into 2 groups. The first group of claims addresses perceived constitutional flaws in the criminal proceedings against Plaintiff, and the second relates to the circumstances of his arrest.

**Counts 1-3**

In Counts 1-3, Plaintiff alleges constitutional flaws in his state court criminal proceedings, including the investigation and trial. Plaintiff comes to this Court in a somewhat unique procedural posture. Although he has been tried and convicted of attempted murder once before, the conviction was reversed and remanded on procedural grounds, and the case is currently set for re-trial in state court. If the state criminal proceeding were the sole criminal process that Plaintiff was subjected to, this case would be stayed under *Younger v. Harris*, 401 U.S. 37 (1971) (a federal court should abstain from further proceedings when a pending state court criminal proceeding is related to the same incident and involves the same parties).

Additionally, Pursuant to *Heck v. Humphrey,* 512 U.S. 477 (1994), by which the Court is required to dismiss a § 1983 suit that would imply the invalidity of a previous conviction or sentence, the claims raised in Counts 1-3 of the Amended Complaint would have been barred prior to 2016 because the challenge to the Defendants' conduct in gathering evidence and prosecuting Plaintiff would have implied the invalidity of his Illinois state law conviction for attempted murder and assault. But that conviction has been reversed, and Plaintiff is once again standing in the shoes of a pre-trial detainee as to those charges. As such, *Heck* doesn't apply to bar the claims in Counts 1-3 that relate specifically to the state attempted murder and assault charges. *Wallace v. Kato*, 549 U.S. 384, 393-34 (2007); *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013).

However, during Plaintiff's federal trial for robbery of the UPS truck, for which he was ultimately convicted (*U.S. v. Moore*, 13-cr-30212-DRH), J.B. testified that Plaintiff shot her and left her for dead. (13-30212, Doc. 84, p. 84). At sentencing, the judge explicitly took J.B.'s testimony into account in declining to run Plaintiff's federal sentence concurrently with the state sentence and in sentencing Plaintiff to the high end of the guidelines range, a decision

7

subsequently upheld on appeal. *See U.S. v. Moore*, 784 F.3d 398, 405-06 (7th Cir. 2015) (district court adequately and extensively justified high sentence and consecutive application where "the court also heard the testimony of [J.B.] and reviewed her state court testimony regarding Moore's attempt on her life."). Thus, the alleged attempted murder was a factor in determining Plaintiff's sentence.

If in this case, the Court were to accept Plaintiff's allegations that he did not attempt to murder J.B., even at the pleading stage, it would invalidate one of the bases for Plaintiff's federal sentence and would therefore implicate *Heck*. *See Flick v. Preflatish*, 165 F.3d 32 (table), 1998 WL 796062 at *2 (7th Cir. 1998) (upholding dismissal on *Heck* grounds where plaintiff argued that his consecutive sentence based on his career offender status was improper); *Walker v. Skeen*, 31 F. App'x 155 (5th Cir. 2001) (finding plaintiff's § 1983 suit barred where he failed to allege that illegal sentence enhancement had been reduced); *Smith v. Renworth*, No. C 12-5106 SI PR, 2013 WL 530579 at * 2 (N.D. Cal. Feb. 11, 2013) (finding claim that federal prosecutor had a duty to enjoin state prosecutor from using federal sentence for enhancement purposes was barred by *Heck* because it would call into question the validity of the state court sentence); *Bryant v. Ruvin*, 11-21541-CIV 2011 WL 13175615 at *2 (S.D. Fla. July 11, 2011) (finding that for plaintiff to be successful in his § 1983 action, the court would have to determine that his sentence had been unlawfully enhanced, in violation of *Heck*); *report and recommendation adopted by Bryant v. Ruvin*, 11-21541-CIV 2011 WL 13175539 (S.D. Fla. July 29, 2011) *aff'd Bryant v. Ruvin*, 477 F. App'x 605 (11th Cir. 2012); *Body v. Alcoke*, No. 09 C 6856, 2011 WL 1770187 at *3 (N.D. Ill. May 6, 2011) (finding that *Bivens* action was barred by *Heck* where plaintiff attempted to raise facts that would raise invalidity of sentencing enhancement); *but cf. Banks v. U.S.*, 615 F. App'x 377, 377 (7th Cir. 2015) ("It is not clear to us that *Heck* applies to sentence

enhancements as opposed to convictions."). Thus, Plaintiff's claims that J.B. was improperly coerced into implicating him in her attempted murder are barred by *Heck*, so long as Plaintiff's federal sentence stands. Thus **Counts 1-3** must be dismissed without prejudice at this time. Plaintiff may file a new suit if he is able to lift the bar imposed by his federal conviction.

**Count 4**

The procedural posture of Plaintiff's underlying state case dooms his state law malicious prosecution claim as well. To establish malicious prosecution, a plaintiff must show, "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (quoting *Joiner v. Benton Comm. Bank*, 411 N.E.2d 229, 232 (Ill. 1980)); *Sneed v. Rybicki*, 146 F.3d 478, 480 (7th Cir. 1998).

In order to satisfy the second element, a plaintiff must allege that the resolution of the criminal case suggested his innocence. *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004). Moreover, the claim doesn't accrue until "the State [is] precluded from seeking reinstatement of the charges." *Id.* at 461.

Here, Plaintiff cannot state a claim for malicious prosecution because he obviously cannot allege a favorable termination of the underlying state criminal proceeding at this juncture. As the State continues to pursue the charges, the claim is premature and must be dismissed without prejudice.

**Counts 5-10**

The remainder of Plaintiff's claims in **Counts 5-10** are time barred. Although typically, affirmative defenses such as filing an action after the statute of limitations has expired are

9

litigated by the parties after service, *see Jones v. Bock*, 549 U.S. 199, 212 (2007), a Court may invoke these defenses on § 1915A review when the availability of the defense is apparent on the face of the Complaint. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002); *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992).

The statute of limitations for § 1983 claims is governed by the law of the state where the alleged violation occurred. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001)(citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). In this District, Illinois' 2-year statute of limitations applies to such claims. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). In other words, plaintiffs proceeding under § 1983 must bring claims related to their arrest within 2 years. *Ray v. Maher*, 662 F.3d 770, 772-72 (7th Cir. 2011). The claims accrue at the time of the arrest. *Wallace v. Kato*, 549 U.S. 384 (2007); *Bond v. Perley*, 705 F. App'x 464 (mem) (7th Cir. 2017).

Plaintiff was arrested on December 20, 2012, but filed suit nearly 5 years later (on October 23, 2017). Therefore, Plaintiff's § 1983 claims in **Counts 5-8** are barred by the statute of limitations and are dismissed with prejudice.

Plaintiff's state law tort claims in **Counts 9 and 10** are likewise time-barred. Plaintiff alleges that certain defendants subjected him to assault and battery on December 20, 2012, but under Illinois law, the statute of limitations has run on those claims. It is unclear who employed the 12 John Doe Defendants Plaintiff claims committed the tort. But if they were Cahokia police officers, like Defendants Landmann and Plew, the applicable statute of limitations is 1 year under the Illinois Local Government Employees Tort Immunity Act codified at 745 ILCS 10/8-101. *Crockett v. City of Northlake, IL*, No. 00 C 4542, 2002 WL 31236085 at *11-12 (N.D. Ill. Oct. 1, 2002). If, on the other hand, the arresting officers were state employees like Defendant

Melvin, the statute of limitations would be 2 years under 735 ILCS 5/13-202. In either case, Plaintiff filed this too late by years as to all Defendants on his assault and battery claim. Accordingly, **Count 9** will also be dismissed with prejudice.

The same reasoning applies to Plaintiff's state law claim for intentional infliction of emotional distress. Plaintiff alleges that Defendants' actions in making the arrest and continuing the prosecution intentionally inflicted emotional distress upon him. Once again, the accrual date for such a claim is the date of the arrest. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *Evans v. Chicago*, 434 F.3d 916, 934 (7th Cir. 2006). To the extent Plaintiff's claim is premised on the actions of employees of the Cahokia police department, it is subject to a 1 year statute of limitations, which would have run on December 20, 2013. *Davenport v. Dovgin*, 545 F. App'x 535, 538 (7th Cir. 2013). Even if the more generous 2-year statute of limitations applied because some of the arresting officers were state employees, Plaintiff's claim would still be untimely by almost 3 years. **Count 10** must also be dismissed with prejudice.

## Pending Motions

As this case will be dismissed, Plaintiff's pending motions for appointment of counsel are **DENIED AS MOOT** (Docs. 3 and 9).

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1-3** are **DISMISSED without prejudice** as barred by *Heck*. **Count 4** is **DISMISSED without prejudice** for failure to state a claim. Plaintiff may bring another suit regarding Counts 1-4 if circumstances change. **Counts 5-10** are **DISMISSED with prejudice** as barred by the statute of limitations. Plaintiff's Motions are **DENIED as MOOT**. (Doc. 3) (Doc. 9). This case does not count as a strike under § 1915(g). Judgment to enter.

**IT IS SO ORDERED.**

**DATED: February 26, 2018**

s/ STACI M. YANDLE

**U.S. District Judge**
